**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Timothy J. Megyesi,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-16-02140-PHX-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Timothy J. Megyesi's Applications for Disability Insurance Benefits and Supplemental Security Income by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 14, "Pl.'s Br."), Defendant SSA Commissioner's Opposition (Doc. 16, "Def.'s Br."), and Plaintiff's Reply (Doc. 19, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 11, R.) and now affirms the latest decision of the Administrative Law Judge ("ALJ") (R. at 23-37) as upheld by the Appeals Council (R. at 1-4).

**I.    BACKGROUND**

Plaintiff filed his Applications on May 22, 2009, for a period of disability beginning May 19, 2009. (R. at 203.) Plaintiff's claim was denied initially on September 30, 2009, and on reconsideration on October 21, 2010. (R. at 203.) Plaintiff then testified at a hearing held before an ALJ on October 19, 2011. (R. at 55-97.) On November 28,

2011, the ALJ denied Plaintiff's Applications. (R. at 203-12.) On March 7, 2013, the Appeals Council remanded the denial to the ALJ to obtain additional evidence and provide additional rationale regarding the determination of Plaintiff's Residual Functional Capacity ("RFC"), including weighing Plaintiff's subjective complaints and taking additional evidence from a Vocational Expert ("VE") as necessary. (R. at 226.)

Plaintiff testified at two more hearings before an ALJ, on October 13, 2013 and December 17, 2013. (R. at 98-156.) On January 2, 2014, the ALJ again denied Plaintiff's Applications. (R. at 226-36.) On February 12, 2015, the Appeals Council again remanded the denial to the ALJ to further evaluate Plaintiff's impairment of carpal tunnel syndrome and provide additional rationale regarding the determination of Plaintiff's RFC, including weighing the treating and non-treating doctors' opinions and taking additional evidence from a VE as necessary. (R. at 244-47.)

Plaintiff testified at another hearing on September 21, 2015 (R. at 157-196), at which he amended his onset date to May 25, 2010—the last date he received unemployment benefits (R. at 160-61). On November 27, 2015, the ALJ again denied Plaintiff's Applications. (R. at 23-37.) On May 5, 2016, the Appeals Council upheld the ALJ's decision. (R. at 1-4.) The present appeal followed.

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ found in her November 27, 2015 decision[1] that Plaintiff has severe impairments of degenerative disc disease ("DDD"), carpal tunnel syndrome, and chronic pain syndrome (R. at 26), but that Plaintiff has the RFC to perform his past work of "appointment scheduler" or "travel sales," such that Plaintiff is not disabled under the Act (R. at 28-37).

---

[1] The Court will henceforth refer to the final ALJ decision on November 27, 2015—which was upheld by the Appeals Council and was thus the final decision of the SSA—unless otherwise indicated.

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work.

20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises four arguments for the Court's consideration, and the Court will address two of those at the outset. Plaintiff first argues that the ALJ improperly adjudicated the claim as of May 19, 2009—Plaintiff's original alleged onset date (R. at 428)—and should have adjudicated the claim as of May 25, 2010—the new onset date alleged by Plaintiff in the fourth hearing (R. at 160-61). (Pl.'s Br. at 2.) The ALJ may consider evidence that pre-dates the alleged onset date if it is probative in determining Plaintiff's RFC at the time of the onset date, so the ALJ's consideration of pre-onset date evidence is not by itself error—particularly where the evidence was provided to support an earlier onset date alleged by Plaintiff in support of two prior ALJ decisions in this case, and Plaintiff only amended his alleged onset date in 2015, six years after his initial Applications. The Court will evaluate more fully below whether the ALJ's opinion with regard to the amended onset date was supported by substantial, relevant evidence in the record.

Second, Plaintiff argues that the ALJ did not follow the Appeals Council's remand order. (Pl.'s Br. at 7-9.) But, as Defendant points out, the Appeals Council affirmed the ALJ's opinion in the subsequent appeal, and so the Appeals Council itself must have concluded that the ALJ satisfactorily addressed its concerns as stated in the prior remand order. (Def.'s Br. at 3-4.) Furthermore, the Court only has jurisdiction to evaluate final decisions of the SSA—here, the Appeals Council's final notice (R. at 1-4)—and not the decisions made within the SSA before the Appeals Council entered its final disposition. *See Tyler v. Astrue*, 305 F. App'x 331, 332 (9th Cir. 2008); 42 U.S.C. §§ 405(g), 1383(c)(3).

That leaves two arguments for the Court's consideration: (1) whether the ALJ erred in weighing certain medical opinions; and (2) whether the ALJ erred in finding Plaintiff's testimony less than fully credible. (Pl.'s Br. at 9-25.)

### A. The ALJ Assigned Proper Weight to the Assessments of Physicians and Properly Considered the Record as a Whole

Plaintiff first argues the ALJ committed reversible error by assigning inadequate weight to the assessment of treating physician Dr. Brian Page and examining physician Dr. John Peachey. (Pl.'s Br. at 9-12.) An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester v. Chater*, 81 F. 3d 821, 830-31 (9th Cir. 1996)). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* Here, the findings of Drs. Page and Peachey were contradicted by the findings of at least two examining physicians, Dr. Omer Ahmed and Dr. Jeffrey Levison (R. at 31-35), so the ALJ was required to provide specific and legitimate reasons supported by substantial evidence to discount the opinions of Drs. Page and Peachey.

Plaintiff would prefer that the ALJ disregarded the 2009 examination and evaluation conducted by Dr. Ahmed and, although the Court finds no testimony from Plaintiff in the hearing transcripts that his condition deteriorated from 2009 to 2010,[2] he amended his alleged onset date from 2009 to 2010, presumably so that the 2009 evaluation would fall outside the alleged period of disability. But Plaintiff argues the ALJ should have given full credit to Dr. Peachey's evaluation, which was conducted in 2013, three years after the amended onset date. This smacks of gamesmanship with the evaluations—particularly in the absence of corroborating testimony of deterioration from

---

[2] Indeed, in the 2015 hearing, Plaintiff testified as to how he described his disability in his 2009 application for unemployment benefits, and he then testified that he felt the same "pains and symptoms" in May 2010. (See R. at 166-68.)

2009 to 2010—and in any event, the ALJ properly took into account both evaluations in conjunction with all of the evidence, medical and non-medical.

To the extent that Dr. Page's 2011 assessment of Plaintiff (R. at 1011-12) concluded that he had an inability to stand/walk for more than two to three hours in an eight-hour workday, Dr. Page's assessment was inconsistent with Dr. Ahmed's 2009 assessment (R. at 827-30) and Dr. Levison's 2013 assessment (R. at 1133-42). In his report, Dr. Ahmed stated that Plaintiff's examination findings were normal, including full strength and normal flexion, and Plaintiff could, among other things, walk normally, sit comfortably, stand on his toes and heels, and perform a full squat. (R. at 31, 827-30.) In his 2013 report, Dr. Levison also observed that Plaintiff's gait, range of motion and strength was normal and he had no need for an assistive device to walk. (R. at 32-33, 1133-42.) Dr. Levison also reported that claimant performed certain movements "with many theatrics, falling to the side, etc. Intermittently he would yell 'ouch' for unclear reasons, and he will perform a flinching type motion with each and every 'ouch' that he screams." (R. at 32-33, 1133-42.) Although he was able to eventually observe the full range of strength, motion and flexion from Plaintiff, he concluded Plaintiff "was obviously putting forth a less than honest exam. In my opinion, he should not be considered a trustworthy examinee." (R. at 33, 1133-42.)

Although she credited much of Dr. Page's assessment of Plaintiff, the ALJ found the assessment of Plaintiff's capacity to stand/walk was inconsistent with reliable portions of the medical record, including the reports noted above as well as the observations of treating physicians Dr. Jacob Amrani (R. at 1156-59), and Physician's Assistant James Alli (R. at 1045, 1047, 1049, 1055, 1057, 1063). (R. at 34-35.) Likewise, the ALJ discounted similar parts of Dr. Peachey's assessment—those pertaining to Plaintiff's capacity to sit, stand and walk—as inconsistent with reliable portions of the medical record, including all of the examination reports noted above. (R. at 35.) The ALJ thus provided specific and legitimate reasons supported by the record to discount certain portions of the assessments of Drs. Page and Peachey, and the Court finds no error. *See*

*Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989)) (finding that the ALJ gave sufficiently specific and legitimate reasons for rejecting a treating physician's assessment by noting that the assessment was not supported by clinical findings and was based on the claimant's subjective complaints).

Plaintiff also argues that the ALJ erred in crediting the impairment assessments of Dr. N. Tella and Dr. Charles Fina, state examining physicians, who opined after reviewing Plaintiff's medical record that Plaintiff had the RFC to perform light work with no upper extremity limitations.[3] (Pl.'s Br. a 12-16.) Although Drs. Tella and Fina did not examine Plaintiff, they did review the medical record. And, although there is no question that Plaintiff has medical test results—including MRIs, x-rays, and electromyography results—that support a finding that he has severe impairments of DDD, carpal tunnel syndrome, and chronic pain syndrome, as noted by the ALJ, the reports of Drs. Tella and Fina were geared toward an assessment of Plaintiff's RFC, which involves more than just the medical test results. They also considered medical opinions regarding Plaintiff's symptoms and functional capacity. (R. at 34.) Because the ALJ identified specific aspects in which the reports of Drs. Tella and Fina were "supported by the bulk of the medical evidence" (R. at 34), the ALJ did not err in giving the reports great weight. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040-42 (9th Cir. 2008); *Tonapetyan*, 242 F.3d at 1149.

---

[3] Plaintiff again makes the specious argument that the ALJ and Court should disregard Dr. Tella's report because it was prepared in 2009, before the amended onset date. (Pl.'s Br. at 13.) As noted above, Plaintiff alleged his onset date was 2009 for six years within the SSA before amending it to 2010, and Plaintiff never testified that his symptoms deteriorated from 2009 to 2010—indeed, the evidence demonstrates the opposite. In addition, Plaintiff makes the even worse argument that the ALJ and Court should disregard Dr. Fina's March 2010 report because it was prepared "before the date of disability and five years prior to the hearing." (Pl.'s Br. at 13.) The amended onset date is May 2010, two months after Dr. Fina's report. And a report prepared around the time of the alleged onset date is just as, if not more, probative to a disability determination as a report prepared five years later, near the time of the fourth hearing in this matter. Indeed, Plaintiff repeatedly asks the Court to credit Dr. Page's report, which was prepared in 2011, four years prior to the hearing. In short, Plaintiff's arguments as to the timing of the state examining physicians' reports are meritless.

### B. The ALJ Properly Weighed Plaintiff's Testimony

Plaintiff also argues that the ALJ erred in her consideration of Plaintiff's symptom testimony. (Pl.'s Br. at 18-23.) While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). This is because "pain testimony may establish greater limitations than can medical evidence alone." *Id.* The ALJ may properly consider that the medical record lacks evidence to support certain symptom testimony, but that cannot form the sole basis for discounting the testimony. *Id.* at 681. The ALJ may also properly consider inconsistencies in the claimant's testimony, including inconsistencies between the claimant's testimony of daily activities and symptom testimony.

As the ALJ noted, Plaintiff has testified that "he suffers from medical conditions that cause him to experience radiating pain, numbness, stinging, cramping, trembling, headaches, and difficulty using his hands, sleeping, standing, sitting, and lifting." (R. at 29.) "Specifically, the claimant alleged that he can sit for only fifteen to twenty minutes, stand for twenty to thirty minutes, and lift ten to fifteen pounds at most." (R. at 29.)

While the ALJ took into account certain aspects of Plaintiff's testimony in formulating Plaintiff's RFC, the ALJ discounted certain subjective symptom testimony on account of inconsistencies between his subjective reports and the objective treatment and examination records. For example, while Plaintiff has reported difficulty walking, objective observations and clinical examinations have not corroborated that report. (R. at 29-30.) He reported in one instance he was able to walk one to two miles, in another

instance he walked five blocks to his examination, and objective medical examinations by Drs. Ahmed (2009), Levison (2013), and Amrani (2015) revealed a normal gait and full strength. (R. at 29-30, 32-33.) The ALJ also provided a detailed review of Plaintiff's medical test results, which supported findings that Plaintiff has mild to moderate DDD but showed Plaintiff's improvement with treatment and surgery. (R. at 30-35.) In assessing Plaintiff's symptom testimony, the ALJ also noted Dr. Levison's finding that Plaintiff was malingering (or "should not be considered a trustworthy examinee"), inconsistencies over time in Plaintiff's complaints of pain and reporting of his medical history, and instances in which urinary drug screens revealed no prescribed pain medication—which would not be expected if Plaintiff suffered constant, chronic pain, as he has reported. (R. at 32-33.)

Similarly, with regard to Plaintiff's carpal tunnel syndrome, the ALJ reported the medical record included "no evidence of ulnar neuropathy[4]" and little to no evidence after the alleged onset date of any limitations resulting from carpal tunnel syndrome. (R. at 34.) Indeed, the ALJ noted that, upon examination, Plaintiff "generally had good grip strength, good coordination, and normal sensation and motor strength." (R. at 34.)

By identifying myriad inconsistencies as a factor in her credibility determination, the ALJ provided clear and convincing reasons to discount certain symptom testimony. *See Tommasetti*, 533 F.3d at 1039-40; *Burch*, 400 F.3d at 680-81.

Likewise, the ALJ's comparison of Plaintiff's testimony regarding performing daily tasks and his symptom testimony was not improper. The ALJ specifically noted inconsistencies in Plaintiff's reports regarding his ability to walk, do grocery shopping, sweep and mop floors, ride a bicycle, cook, and drive and his reports of his symptoms resulting from DDD and carpal tunnel syndrome. (R. at 29-30.) These inconsistencies are also a specific, clear and convincing reason for the ALJ to discount certain symptom testimony. *See Tommasetti*, 533 F.3d at 1039-40; *Burch*, 400 F.3d at 680-81. As a result,

---

[4] Neuropathy is weakness, numbness, and pain from nerve damage.

the ALJ did not err in weighing Plaintiff's testimony in determining his functional capacity.

## IV. CONCLUSION

Plaintiff raises no error on the part of the ALJ, and the SSA's decision denying Plaintiff's Application for Supplemental Security Income benefits under the Act was supported by substantial evidence in the record.

IT IS THEREFORE ORDERED affirming the November 27, 2015 decision of the Administrative Law Judge, (R. at 23-37), as upheld by the Appeals Council on May 5, 2016, (R. at 1-4).

IT IS FURTHER ORDERED directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 28th day of September, 2017.

Honorable John J. Tuchi
United States District Judge